This is our third case in the morning, Ferrichs v. State of Illinois. For the appellant, Mr. Young. For the appellant, Mr. Ellis. You may proceed. Thank you, your honor. Good morning. May it please the court. I am here on behalf of the personal representative of Christina Ferrichs, who was a Medicaid applicant in McLean County, but who had been penalized for a number of months because of what was purported to have been asset transfers. We're just talking about four months, aren't we? Correct. The other four months, is that okay? Yeah, four months is okay. We agree. She deliberately incurred those penalties by making the transfer she did. It should not have been eight months. The underlying issue is whether or not the gift of income she made in the same month she received it was to be treated as a transfer of asset policy. And we submit that it was erroneously decided. We must start with the policy manual of the department, which is the official regulations, the official policy of the department, which in 070220B defines assets as transfers of real or personal property. We're obviously not dealing with real property here, so we have to move to the definition of personal property. Under PM 070206, the definitions are made that personal property is basically anything that's not real property. However, there are two very important exceptions made under that section. The first, actually the second of which, would be the personal effects of an applicant or a client for Medicaid, which accepts clothing, personal effects, household goods, and those kinds of things. More importantly, the first exception to the rule is, as stated in the policy manual very explicitly, money considered as income for a month is not an asset for the same month. And there is, therefore, under that purpose, no distinction made between income spent down and asset transfers, as I think erroneously was decided in the McDonald case, which we acknowledge is a somewhat formidable case to overcome here. What happens if we follow McDonald? Well, I think there's an important distinction to be made in this case because the actual representation of the express policy of the department was made to the approved representative of Mrs. Ferricks, whereas the McDonald case basically dismissed Mr. Rupchik's letter as a, because it was just in general circulation, it wasn't made to the representative of Mrs. Ferricks. Did her representative write a letter on her behalf? Not on behalf of Mrs. Ferricks. It was in an earlier case. But it was the same person to whom the exact question that was posed to Mr. Rupchik, is income given away in the same month it's received? But it's not like you've got a representation on this particular case. That's true. Okay. That's true. But as far as reliance is concerned, the representation was made to the very same person, and I think that makes it a much stronger case for purposes of equitable estoppel that the state now can't be heard to deny the representation that they made to Mrs. Ferricks' representative under that circumstance. If we look at the definition of personal property... I mean, who was Otel representing at the time? Mrs. Ferricks. At the time of when he wrote the letter, what case was that in regard to? I don't think the case is identified. Okay, okay. There was just an express request made of the department to interpret what the 0702A actually meant. And the specific question that was asked was, does the fact that 0702A states that money considered as income per month is not an asset for the same month mean that income given away to another person during the same month is received is not subject to asset transfer policy? To which the chief of the Bureau of Policy, not what was dismissed in McDonald as a mere ministerial officer, this is for the chief of the Bureau of Policy, Mr. Rupchak, who replied very expressly in response to your letter, quote, income given away during the same month it is received is not subject to the transfer of asset policy. And therefore, you know, I submit that, you know, first of all, we should recognize that Mr. Rupchak was no just mean bureaucrat just rendering an opinion. He was the chief of the Bureau of Policy. Secondly, as we asked the court to recognize, this representation was made to Mr. Etel, who was, in fact, Mrs. Ferrick's approved representative for purposes of achieving her eligibility. Well, this letter is in 2001. Right. There's been no change in the law since. Right. But the letter is in 2001, and she entered care in 2004. Correct. And the inheritance is in 2008. I'm sorry, what was it? The inheritance. The inheritance came later on. That's correct. She went off of Medicaid for a period of time and dealt with the money that she had inherited by making some transfers and then reapplying for eligibility after those transfers had been made. And under the rules, under Illinois rules that were extant at the time, transfers of income that she made during that period of time she was paying privately should not have been, we urge, subjected to the transfer of asset policy. She acknowledges that the assets she transferred during that period of time certainly were. And most importantly, I think, is the court, I think, in McDonald overlooked 5 ILCS 100 slash 1-70 part of the Illinois Administrative Procedure Act, which expressly and explicitly states that rule means and includes any agency statement of general applicability as well as interpretations of those kinds of things. So what we have here is somebody more than just a mere ministerial officer interpreting what the policy is because he's the chief of the policy period. And therefore, that expression should be given the effect really of law. And it becomes a rule that the department should be bound by. Most importantly. I don't know that this matters. So three years before she went into care, she had a representative. Does that mean someone from public aid who was advising her as to what she might do in the future to qualify? I don't understand how a letter in 2001 to someone who's her, I don't know what it means for him to be her representative. And I don't know how that. I'm not saying that the letter has no meaning. I'm just asking about that time frame. I don't understand. In 2001, when Mr. Edel, who represents applicants for medical assistance. What does that mean? Well, he operates as an approved representative seeking to help persons become eligible for medical assistance. Do you pay him or does he work for public aid? Oh, no. He does not work for public aid. He's a private contractor. So he's like an investment advisor or a financial rep. Correct. He's giving advice. That's correct. For future plan. Exactly. Okay. Yes. So three years before she goes into care and a number of years before she qualifies for assistance, she gets this letter. Well, the policy was extant at the time. I'm not arguing with your understanding of policy. I'm just asking about the letter. And then there was the question simply raised. Does this mean what it appears to mean? Because we're planning for the future. Exactly. Okay. Exactly. And how might I advise my client to handle her assets for purposes of eligibility in the future? That's precisely correct. And, you know, nothing changed during the period of time. And it was, you know, at a later time when she did become eligible, they relied upon his advice and the letter that he'd previously gotten, which said that the policy as expressed meant what it appeared to mean, is that income is not an asset during the same month that it's received and therefore can be given away without being subjected to the transfer of asset policy. Well, this is the same situation as McDonald where we said we weren't going to follow that and it would be absurd for us to require departments to adhere to erroneous interpretations made some years earlier for the benefit of an unrelated third party. Well, I agree. McDonald's a problem for me. But there is that distinction that the representation was made specifically to the representative that was advising Mrs. Frerichs. It was for the benefit of an unrelated third party. The transfers were, yes. The interpretation was. I'm quoting a language from McDonald. An interpretation made some years earlier for the benefit of an unrelated third party. Yeah, maybe many of them. All of Mr. Edel's clients, certainly. So, you know. But McDonald also, if you look at the very first words, it seems to me that the panel there sought to, they perceived some sort of a policy tension and sought to resolve it. And the only thing that we brought before the court as we... I think McDonald is exactly on point. We rely on that. My opponent has tried to make a distinction between McDonald, which is that in McDonald, the person who advised Ms. McDonald, or Mr. McDonald, I forget which, but the person who advised McDonald was not the person to whom that letter had been written to in 2001. It just so happens in this case, that letter was written to the same person who represents Mrs. Frerich. So, but that's a distinction without a difference. Because the estoppel issue that was decided in McDonald didn't turn on who the representations were made to. There were three bases for denying estoppel to the appellant, or the appellee, rather, in McDonald. That was, there was no fraud or injustice in applying the federal law to the applicant, and there's none here either. That the statements of Illinois employees, including in letters to people, don't necessarily bind the state, and certainly not in subsequent decisions. That would apply here as well. The third is that estoppel is a question of fact, and requires a factual record. There's no factual record in McDonald, and there's no factual record in this case either. My opponent stands here and tells you that she reasonably relied on the etto letter, but there's no fact showing that in the trial court or from the agency. Willful blindness is a defense to equitable estoppel. I think we could very easily make the case that any representative who relied on the etto letter and didn't read federal law, state law, the Illinois Administrative Code, or the federal advisory decisions about how to apply this law would be being willfully blind. How do you explain that language in the manual, money considered as income for a month is not an asset for the same month? Your Honor, I'd rely on the decision in McDonald, which said that that language dealt with eligibility for Medicaid benefits, not necessarily the asset transfer policy. And so when caseworkers are looking at an application and deciding whether the person is eligible or not, income and assets are divided that way, and we don't hold things that were received in that month and spent in that month with the assumption that it's spent on the person's living and not as gifts. But that would only apply at the point of application. With regard to asset transfer policy, that distinction is not made. That's what McDonald's holds. And that's the way I would urge the Court to read both the federal law, the state law, the Illinois Administrative Code, and apply it. I would also argue, as I did in McDonald, that even if that language were to be read that way, it's inconsistent with federal and state law otherwise, and it can't be applied. So I think we have a case here of straight stare decisis. The prior case is on all fours. This case decided the decision at the end of last year, and it should be applied in this case. I respect my opponent's desire to have the Supreme Court review it. If he wants to file a PLA here, that's his right. But the Court should rule against him based on the recent decision in McDonald's. Let me go through some points. One more point. I discussed eligibility versus asset transfer. One other point I think I haven't made that I'd like to make. With regard to the Rupcich letter, his argument is that it binds the Department. My response to that is there's only two people who can bind the State in these cases. That's the Secretary of the Department of Human Services and the Director of Health Care and Family Services. Those are the two people who give applicants final administrative decisions that bind them, and those are the decisions that come before this Court. I can understand frustration with the complexity of the law in this area. I can understand frustration with getting one decision from one employee and maybe a different decision from a different employee. That's very difficult on applicants. I understand that. That's what the last paragraph in McDonald's points to. But in the end, the decisions come from the Director and the Secretary, and those are the decisions that get reviewed upon appeal. So I would urge the Court not to hold the Rupcich letter as something that binds the Department, but just look to the decisions that are included in my brief. If I checked into a care facility, but I was still fully ambulatory and left it, take the bus downtown, that sort of thing. During the first month that I'm in the care facility and I'm eligible for benefits, I receive a $10,000 inheritance, and I decide to take a tour of Europe that month with myself and my granddaughter who just graduated from college, and I spend it. Is that a legitimate living expense? Is that something I'm going to be penalized for? How would the Department treat that? That's curiosity. I'm not planning to do it, but I'm curious. I don't know if you are someone who's not eligible for Medicaid benefits, and if this is the month before you make your application. No, no, I'm eligible. I'm living at St. Clara's Manor in Lincoln, Illinois, and I'm eligible, and my income meets the, and I don't have any other significant assets, and I get a one-shot $10,000 inheritance that month. I didn't even know I was going to get it, and a lawyer hands me the check in the office, and I say, I'm spending it today. I'm going to take this tour of Europe. My granddaughter just, it's May of whatever year. She just graduated. We're blowing the states. We'll be back in a month. I'm going to spend $10,000 in Italy and transportation. Your Honor, I'm just going to have to say I don't know. Okay. I suspect. Well, I'm trying to understand the spend down and legitimate living expenses, and I understand the asset transfer policy. I guess your opinion wouldn't be binding on spending. It wouldn't bind on me. Maybe I'm being smarter than prior employees, but the asset transfer policy is something that's done at the time a person makes an application for medical assistance. And the prior months. It can happen if you get knocked out and you have to reapply because you've been knocked out of the program because of an inheritance like the one in your hypothetical. That's what happened to Mrs. Frerichs. She got this giant inheritance, and then, and I can't recall whether it was that her income or her assets took her out of the program, but she was still eligible for Medicaid, but her assets or income wouldn't allow her to get benefits in that month. And so she was, and this was all understood by all the parties involved. That's why she begins, you know, trying to discourage herself of these assets. The people who processed her application determined that the way she did it, using the asset transfer policy, was improper. And so I suspect the same rationale would apply to your hypothetical. We'd say, you've gotten this income, and McDonald talks about that. If you deliberately stop your income from becoming an asset, then you've violated the rules. What if I get linseed implants and a new knee? And I pay for it because I want a particular orthopod, and he won't even talk to me if I'm getting benefits, and I use that $10,000 to rehab myself? Your Honor, I don't know the answer to your question. If there are no other questions that I might be able to answer, I'll ask the Court to affirm the second point. Thank you. Briefly, if I could address that hypothetical, if you spent the money before the end of the month, it would be gone, and it would be completely permissible. With respect to you paying a physician, you would have received value for it and it would have been a legitimate transfer in any event anyway. So the first question, I suppose, is if you got value for your trip to Europe in any event, it might have been excused under that circumstance. But if that was seen as a pure gift under the rule, the very next sentence says, any income added to a bank account is income for that month and not a part of the account's asset value for the month. To figure the asset value of the account, subtract the income from the bank balance, it's really on the first day of the next calendar month that it does become an asset. Under that circumstance. Do you agree with your opponent that statements made by Rufstich could not bind the Department? Absolutely not. For this reason. I mean, one of the reasons that we're struggling with... Who is he? He was chief of the Bureau of Policy. When the inquiry is made of a Mr. Hartel who works in policy and gives opinions to workers, he forwarded it on to the chief of policy. And if you look at it carefully, the letter is a letter of general inquiry. They don't give specific opinions on specific cases. You have to make a letter of general inquiry, and then the response is made of a general interpretation of the rule itself. And that's very key because under those circumstances, if they render an opinion or make a determination in a specific case, by law, it has no binding effect anywhere else. But when you make a general inquiry, and then there is an expression made by... And I don't know where counsel gets... Only the secretary or the director can make these. You know, that's the first time I've ever heard that. The chief of the Bureau of Policy certainly seems imbued with the authority to try to determine what the policy that the department has and administers means. And that's the exact situation in this case. And I'd also invite your attention to the Miller case where, you know, the whole point of it is that even if the department's rules are wrong, the important part is to apply them fairly to the public. It's just a matter of justice so that, you know, they're not misled by what the policies are. And counsel, general counsel to the workers of the department basically said, well, even if it's wrong, you've got to fairly apply these rules and have them give the meaning that the public understands that they have where it's published. The policy manual itself starts out as these are the official policies of the department. Just briefly on the issue of Estoppel, the letters are in the file. It's clear. If you read... I mean, I think counsel gave the record short shrift here. The arguments before the Bureau of Fair Hearings went at length about the reliance upon the Rupchik letter. And I think to just dismiss Mr. Rupchik as just some sort of an Illinois employee, not having any kind of authority is really unduly dismissive, particularly in view of the fact that in this instance, Mr. Adle makes a general inquiry. He didn't do it on behalf of a specific client. But he asked, what does this policy mean? And he was given a very specific answer to which he relied upon for all of his clients, and specifically Mrs. Frerichs, as the record in this case would show. With respect to counsel's suggestion that intent somehow comes into play, that's not part of the process at all. So with that, I respectfully ask that the court reverse it. Thank you, counsel. Thank you, Madam, for your advice.